O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

GREGORY PANKA,                          )        Case No. CV 11-1481 CAS (JCx)
                                        )
                    Plaintiff,          )
                                        )        **ORDER GRANTING
vs.                                     )        DEFENDANT'S MOTION FOR
                                        )        SUMMARY JUDGMENT**
                                        )
TIN, INC. d/b/a TEMPLE-INLAND;          )
                                        )
                    Defendant.          )
                                        )
_____         )

## I.      INTRODUCTION

On June 30, 2010, plaintiff Gregory Panka ("plaintiff") filed the instant action in Los Angeles County Superior Court against TIN, Inc. d/b/a Temple-Inland ("TIN" or "defendant"), John Hitt, and Does 1–50, alleging three claims for relief: (1) tortious retaliation and termination in violation of public policy embodied in Cal Lab. Code § 226 and §§ 6310–6312; (2) unlawful retaliation in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12940(h); and (3) Intentional Infliction of Emotional Distress ("IIED").  On January 28, 2011, the Los Angeles County Superior Court sustained Hitt's demurrer without leave to amend.  Following that ruling, TIN timely removed to this Court on the basis of diversity jurisdiction.  See Dkt. No. 1.

On December 30, 2011, defendant filed a motion for summary judgment. Plaintiff filed his opposition on January 9, 2012, and defendant filed its reply on January 16, 2012. Defendant's motion is currently before the Court.

## II.    BACKGROUND

In 2004, plaintiff was hired by TIN, a corrugated box manufacturer, to work as a maintenance mechanic at its Bell, California facility ("Bell facility"). Declaration of Bob Renaud ("Renaud Decl.") ¶¶ 2–3. Because the Bell facility houses heavy-duty industrial machinery, TIN implemented a strict "Lockout/Safeguard" policy to protect its employees. The "Lockout" policy requires that maintenance employees "[n]ever attempt repairs or non-operating adjustments to the machine without shutting down and locking out the machine." Id. ¶ 5, Exh. B. Specifically, maintenance employees must place a padlock on the machine's main energy switch before beginning maintenance work to ensure that the machine is in a "zero energy state" and remains that way until the repair work is done. Id. ¶ 6, Exh. B. Once repairs are complete, the employee who placed the padlock on the machine must personally remove the lock. Id. ¶ 7, Exh. B. The "Safeguard" policy, by contrast, applies to production employees performing minor tool changes or troubleshooting activities and seeks to achieve an "intermediate energy state" through a keyed switch in the machine's electrical control circuit. Id. ¶ 8, Exh. D. In 2004, when plaintiff was hired, the Lockout policy generally provided a warning for an employee's first violation. Declaration of James R. Moss, Jr. ("Moss Decl.") ¶ 5. In 2006, however, TIN revised its policy to reflect that any employee found in violation of the policy is subject to immediate termination. Id., Exh. A.

On December 5, 2008, plaintiff determined to repair a Pre-Feeder EO-68 machine to remove and replace a broken roller. Moss Decl. ¶ 3, Exh. B (Deposition of Gregory Panka ("Panka Depo.")) at 279:1–280:16. The EO-68 machine is located directly beneath a 3,000-pound elevator. Plaintiff utilized the Safeguard procedure by inserting a gravity pin but failed to apply a padlock to the main energy panel as required by the Lockout policy. Id. at 63:14–64:2; 89:1–90:8. Plant manager Scott Vincent observed

plaintiff's failure to use the Lockout procedure and suspended him pending investigation.  Id.; Declaration of Scott Vincent ("Vincent Decl.") ¶ 7.  On December 10, 2008, plaintiff submitted a written account to Human Resource and Safety Manager Bob Renaud acknowledging that he did not use a padlock as required by the Lockout policy because he did not think it was necessary .  Moss Decl. ¶ 6, Exh. E.  TIN terminated plaintiff's employment two days later on December 12, 2008.  Renaud Decl. ¶ 14; Vincent Decl. ¶ 13.

On November 6, 2009, plaintiff filed a complaint with the Department of Fair Employment and Housing ("DFEH") alleging that he was wrongfully terminated because he (1) filed a wage and hour lawsuit in May 2008, and (2) offered to provide assistance to a co-worker regarding a sexual harassment complaint.  The DFEH issued plaintiff a right to sue letter and the instant action followed.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

**IV.   DISCUSSION**

**A.   First Claim for Retaliatory Termination in Violation of Public Policy**

Plaintiff alleges that his termination was in retaliation for: (1) plaintiff's complaints to TIN's management regarding its "unsafe and hazardous working conditions"; (2) plaintiff's reporting of ongoing workplace sexual harassment directed at TIN employee Edward Macias; and (3) plaintiff's May 2008 filing of a wage and hour suit against TIN.  Compl. ¶ 29.  According to plaintiff, his conduct was protected under Cal. Lab. Code §§ 6310–6312, Cal. Govt. Code § 12940(h), and Cal. Lab. Code § 1102.5.  Id. ¶ 30.

Analysis of a claim for retaliatory termination under California law follows a three step approach.  First, plaintiff must establish a prima facie case.  If he succeeds, the burden shifts to defendant to establish a legitimate non-retaliatory reason for the adverse employment action.  If defendant carries its burden, plaintiff must  demonstrate that the stated reasons are merely pretext for retaliation.  E.g., Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005) (adopting burden-shifting framework under Title VII of

the Civil Rights Act of 1964 established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802–05 (1973)).  Each step is analyzed in turn.

**1.   Whether Plaintiff Has Established a Prima Facie Case**

To state a prima facie claim for retaliation, plaintiff must show that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.[1]  <u>E.g.</u>, <u>Akers v. Cnty of San Diego</u>, 95 Cal. App. 4th 1441, 1453 (Cal. Ct. App. 2002).  An activity is "protected" if it implicates an important public interest that is "tethered to fundamental policies that are delineated in constitutional or statutory provisions."  <u>Green v. Ralee Eng'g Co.</u>, 19 Cal. 4th 66, 71 (1998) (internal quotation marks and citation omitted).  Such activities generally fall within one of four categories: "the employee (1) refused to violate a statute; (2) performed a statutory obligation; (3) exercised a constitutional or statutory right or privilege; or (4) reported a statutory violation for the public's benefit."  <u>Id.</u> at 76.  Generally, there must be a "temporal proximity" between the protected activity and adverse employment action to establish causation.  <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001).

Defendant argues that plaintiff's complaints to TIN's management about unsafe working conditions do not constitute "protected activity" because plaintiff "never made any oral or written complaint even of potentially unlawful conditions, as required under [§§ 1102.5 and 6310]."  Mot. at 9.  Specifically, defendant argues that plaintiff "admits that he <u>did not</u> disclose a violation of state or federal statute, rule, or regulation to anyone" and "testified that he <u>never</u> submitted a safety-related complaint about TIN to any government or regulatory agency."  <u>Id.</u> at 10 (emphasis in original).  Moreover, defendant asserts that plaintiff "never filed an internal safety complaint with TIN, and never alleged that anyone at TIN violated Cal/OSHA or Company safety policies."  <u>Id.</u> at

---

[1]It is uncontested that being terminated is an "adverse employment action." Accordingly, only the first and third prongs of the test are at issue.

1    11. Defendant maintains that plaintiff's actions were simply in accordance with what

2    any maintenance worker would do—namely, identify and offer safety improvement

3    suggestions. Id. Further, defendant argues that plaintiff's alleged reporting of ongoing

4    harassment of his coworker Edward Macias is not a protected activity because plaintiff

5    did not actually witness any harassment and he did not report any harassment to TIN's

6    management. Id. at 10. Finally, while defendant acknowledges that plaintiff "arguably

7    engaged in 'protected activity' by filing a lawsuit against TIN," defendant contends that

8    there is no causal connection between the May 2008 lawsuit and the December 2008

9    termination. Id. at 15–16.

10        In opposition, plaintiff argues that he "regularly complained" about defendant's

11   alleged failure to provide a safe working environment, including an oral complaint to

12   supervisor John Hitt only two weeks before being terminated. Opp'n at 3–4. He also

13   contends that he witnessed his coworker Macias get harassed by John Hitt and heard Hitt

14   and supervisor Russell Ramirez joke about the incident, and thereafter informed Ramirez

15   that plaintiff would testify against Ramirez and Hitt in connection with Macias's

16   harassment suit. Id. at 5. Such testimony, according to plaintiff, is "protected activity."

17   Id. at 6. Finally, plaintiff argues that his filing of the May 30, 2008, lawsuit against TIN

18   constituted protected activity and was close enough temporally to establish a connection

19   between that activity and his termination. Id. at 2–3.

20        In reply, defendant asserts that plaintiff's violation of the Lockout policy came

21   after any of the allegedly protected activity occurred which therefore "sever[ed] any

22   inference of causal connection" between the activity and termination. Reply at 9.

23   Moreover, defendant contends that John Hitt—to whom plaintiff orally complained

24   about unsafe working conditions—did not play any role in plaintiff's termination. Id.

25        The Court finds that plaintiff has set forth sufficient facts for a jury to conclude

26   that plaintiff has established a prima facie case of retaliatory termination. First, plaintiff

27   engaged in protected activity when he filed a lawsuit against TIN on May 30, 2008. See,

28   e.g., Montoya v. Mgmt. Training Corp. (MTC), 2001 WL 5240968, *6 (E.D. Cal. Oct.

31, 2011) ("It is undisputed that [plaintiff] engaged in protected activity" by "filing a lawsuit against [defendant] for alleged violation of FEHA"); <u>Gould v. Maryland Sound Indus., Inc.</u>, 31 Cal. App. 4th 1137, 1150 (Cal. Ct. App. 1995) (finding that "reporting violations of law" to employers is protected conduct).[2]   Second, as discussed above, it is undisputed that termination of plaintiff's employment constitutes an "adverse employment action."   Finally, a reasonable jury could conclude based on temporal proximity alone that there is a causal link between plaintiff's protected activity in late May 2008 and termination approximately six months later in December 2008.   <u>See, e.g.</u>, <u>Loggins v. Kaiser Permanente Int'l</u>, 151 Cal. App. 4th 1102, 1110 (Cal. Ct. App. 2007) (holding that temporal proximity between protected conduct and adverse employment action is enough to establish causation for prima facie case); <u>Flait v. North Am. Watch Corp.</u>, 3 Cal. App. 4th 467, 478 (Cal. Ct. App. 1992) (finding a cap of "a few months" sufficient to withstand summary judgment as to causal link); <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 977 (9th Cir. 2003) (finding that a gap of "three to eight months is easily within the time range that supports an inference of retaliation" in § 1983 case); <u>Allen v. Iranon</u>, 283 F.3d 1070, 1078 (9th Cir. 2002) (finding an "eleven-month gap" to be "within the range that has been found to support an inference that an employment decision was retaliatory" in first amendment retaliation case).

Accordingly, plaintiff has offered sufficient evidence to create a triable issue as to his prima facie claim for retaliation.

///

_____

[2]Whether plaintiff's other conduct, such as allegedly complaining about unsafe working conditions (though never formally) and participating in a coworker's harassment suit (though not directly) constitutes "protected activity" is a closer case.  However, even assuming plaintiff's safety complaints and minimal involvement in Macias's harassment lawsuit were found to be "protected conduct" and causally connected to his termination, that would merely satisfy plaintiff's prima facie burden.  As discussed <u>infra</u>, plaintiff still carries the burden to demonstrate pretext.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.      Whether Defendant Has Offered a Legitimate Non-Retaliatory Reason for Plaintiff's Termination**

Because plaintiff has established a prima facie case, the burden shifts to defendant to prove that there is "a legitimate, nonretaliatory reason for the adverse employment action." <u>Yanowitz</u>, 36 Cal. 4th at 1042.

Defendant argues that plaintiff's knowing and willful violation of the Lockout policy provides a legitimate reason for terminating his employment. Mot. at 16.

In opposition, plaintiff contends that "a genuine issue of material fact exists as to whether [plaintiff] complied with [defendant's] safety precautions." Opp'n at 18. In support of this assertion, plaintiff offers his deposition testimony in which he "explain[s] that he complied with all applicable safety rules." <u>Id.</u>

The Court finds that defendant has offered a legitimate, non-retaliatory justification for terminating plaintiff's employment based on plaintiff's violation of the Lockout policy. Renaud Decl. ¶¶ 11–14. <u>See</u> <u>Moore v. May Dept. Stores Co.</u>, 222 Cal. App. 3d 836, 840 (Cal. Ct. App. 1990) (finding that "there was good cause, as a matter of law, to terminate" plaintiff's employment based on her "violation of May Company security procedures"). Plaintiff testified that he worked on the EO-68 machine "for repairs and replacement" which, according to plaintiff, was a maintenance function. Moss Decl. ¶ 6, Exh. E; ¶ 3, Exh. B at 285:21–23 ("Q. And [replacing a roller on the EO-68 machine] is a maintenance rather than an operator function; right? A. Yes."). Plaintiff admitted that "the rules are written so you cannot really decide what you want to decide. You either follow them or you don't." <u>Id.</u> ¶ 2, Exh. A at 80:5–17. Defendant's policies clearly demonstrate that a maintenance employee must comply with the Lockout procedures in performing any maintenance-related tasks. <u>See</u> Renaud Decl. ¶ 5, Exh. B ("For personnel involved in maintenance activity, it is the intent of these guidelines that every individual needing protection from the unexpected energizing of equipment *must have a personal lock and, preferably, a tag* in place" . . . "Safeguard keyswitches are control circuit devices utilized by operating personnel during normal

production and <u>must not</u> be used by maintenance personnel in lieu of a lock" . . . "Work that is not in compliance with the lockout procedure or the supplemental checklist is permitted only after an approved Procedure Deviation (Variance) form has been obtained.") (italics added, underlining in original).  Plaintiff conducted these repairs without placing a padlock on the machine's power source as required by the policy and did not obtain a waiver for a "variance."  Moss Decl. ¶¶ 3, 6, Exh. B at 262:3–4; Exh. E. The policy provided for immediate termination if an employee failed to comply with the Lockout policy.  Renaud Decl. ¶ 5, Exh. B at 7–8 ("Adherence to energy isolation procedures is a condition of employment and employees who fail to comply are subject to disciplinary action up to and including termination of employment.").  For all these reasons, defendant has shown "good cause, as a matter of law, to terminate" plaintiff's employment.[3]  <u>Moore</u>, 222 Cal. App. 3d at 840.

Accordingly, defendant has satisfied its burden of proving a legitimate, non-retaliatory justification for terminating plaintiff's employment.  <u>Yanowitz</u>, 36 Cal. 4th at 1042.

### 3.    Whether Plaintiff Has Established Pretext

Because defendant has met its burden of proving a legitimate reason for firing plaintiff, plaintiff must now demonstrate that the stated reasons are merely pretext for retaliation.  <u>Yanowitz</u>, 36 Cal. 4th at 1042.  To establish pretext, plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer

---

[3]Although plaintiff asserts at one point in his deposition that replacing the broken roller on the EO-68 machine was a "minor repair," the facts demonstrate otherwise.  More importantly, his disagreement with TIN's designation of the work as a maintenance repair does not defeat summary judgment unless the employer's position is so implausible as to be unworthy of credence.  <u>See McRae v. Dep't of Corr. & Rehab.</u>, 142 Cal. App. 4th 377, 390 (Cal. Ct. App. 2006).

that the employer did not act for the [asserted] non-discriminatory reasons."[4] <u>McRae v. Dep't of Corr. & Rehab.</u>, 142 Cal. App. 4th 377, 390 (Cal. Ct. App. 2006). "Under Ninth Circuit law, '[c]ircumstantial evidence of pretext [in ADA case] must be specific and substantial in order to survive summary judgment.'" <u>Brown v. City of Tucson</u>, 336 F.3d 1181, 1188 (9th Cir. 2003) (quoting <u>Bergene v. Salt River Agric. Improvement & Power Dist.</u>, 272 F.3d 1136, 1142 (9th Cir. 2001)). "At least three types of evidence can be used to show pretext: (1) direct evidence of retaliation, such as statements or admissions, (2) comparative evidence, and (3) statistics." <u>Iwekaogwu v. City of Los Angeles</u>, 75 Cal. App. 4th 803, 816 (Cal. Ct. App. 1999); (citing <u>Penk v. Oregon State Bd. of Higher Educ.</u>, 816 F.2d 458, 462 ((9th Cir. 1987)).

Defendant argues that its actions were not pretextual as a matter of law because "the fact that TIN took no action against [p]laintiff after the lawsuit was filed, but took prompt action one week after his Lockout violation, is conclusive evidence that [p]laintiff's violation of TIN's lockout policy was the cause of TIN's action." Mot. at 21. According to defendant, any inference of pretext that could be drawn is "sever[ed]" by plaintiff's clear violation of company policy. <u>Id.</u> at 20. Finally, defendant contends that even if plaintiff could offer a scintilla of evidence implying pretext, it is not "specific and substantial" enough to withstand summary judgment. <u>Id.</u> at 18.

In opposition, plaintiff argues he can "directly prove that he was subject to discipline in a manner which grossly deviated from [d]efendant's normal pattern and practice" because, according to plaintiff, TIN always "adhered to a two strike policy for

---

[4]Plaintiff must offer more than mere temporal proximity between protected activity and his termination to establish pretext, because "that temporal proximity, although sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action, does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual. [Plaintiff's] contrary argument, if accepted, would eviscerate the <u>McDonnell Douglas</u> framework for resolving claims at the . . . summary judgment stage." <u>Loggins</u>, 151 Cal. App. 4th at 1112.

any violation of the lockout procedures." Opp'n at 20. In support of this contention, plaintiff offers the testimony of Hobbie Hicks and Carl Rossi, who testify that a one-strike termination was "outside the norm" of defendant's general operating procedure.[5] Id. Further, plaintiff asserts that he was the "first to be charged under the zero-tolerance policy despite the fact that the company has thousands of employees and the policy had allegedly been in effect for a purported 1–2 years." Id. (emphasis omitted). This fact, according to plaintiff, "is sufficient evidence of pretext" to withstand summary judgment. Id. at 20–21.

The Court finds that plaintiff has not met his burden of demonstrating a triable issue as to whether defendant's legitimate reason for firing plaintiff was pretextual. The following sequence of events is not subject to reasonable dispute: plaintiff violated TIN's Lockout policy on December 5, 2008; his supervisor witnessed the violation and instructed him to apply the padlock to the machine; TIN suspended plaintiff pending investigation; plaintiff provided a written statement during the investigation that demonstrated his willful failure to utilize the Lockout procedure; and defendant fired plaintiff one week later on December 12, 2008. This intervening violation of company policy severs any inference of pretext because all of plaintiff's alleged "protected activity" occurred prior to his violation of the Lockout policy and, in the case of his filing of the lawsuit, several months prior.[6] See Stevens v. Cnty of San Mateo, 2006 WL

---

[5]Contemporaneously with its reply, defendant filed evidentiary objections to the declarations of Carl Rossi, Hobbie Hicks, and Gregory Panka. See Dkt. No. 27. The Court has considered and sustains the objections to the testimony of Carl Rossi for the reasons set forth in footnote 8. To the extent the Court relies on other evidence to which defendant has objected, as reflected in this order, those objections are overruled. All remaining objections are overruled as moot.

[6]Moreover, Human Resources and Safety Manager Bob Renaud and Plant Manager Scott Vincent—the managers who determined to terminate plaintiff's employment—both
(continued...)

581092, *1, *9 (N.D. Cal. Mar. 7, 2006) (granting summary judgment for employer because although plaintiff engaged in protected activity, intervening altercation with coworker justified employer's decision to terminate and plaintiff could not show pretext).

　　　None of the evidence offered by plaintiff is relevant to the question of pretext because it involves circumstances prior to TIN changing its policy to a one-strike policy in 2006.[7]  For example, plaintiff points to his coworker receiving a warning letter for his first violation of the Lockout policy.  Pl. Exh. 15.  However, the letter is dated February 26, 2006, prior to TIN announcing its one-strike policy in March 2006.  Renaud Decl. ¶ 9, Exh. E.  Plaintiff also cites documents he signed when he commenced his employment in 2004 as evidence that TIN maintains a two-strike policy.  Pl. Exh. 14.  Similar to the warning received by his coworker, those documents were issued prior to TIN changing to a one-strike policy.  Renaud Decl. ¶¶ 9–10, Exh. E.  Further, plaintiff's reliance on Hobbie Hicks's testimony as evidence that TIN adhered to a two-strike policy is inapposite because Hicks was terminated in January 2006, prior to TIN changing to a one-strike policy in March 2006.[8]  Conversely, and importantly, plaintiff offers no

─────────────────

(...continued)
state that they were not aware that plaintiff had filed a lawsuit against TIN in May 2008 at the time they decided to fire plaintiff in December 2008.  See Renaud Decl. ¶ 20; Vincent Decl. ¶ 14.

　　　[7]As discussed supra Section A.2, the Court is unpersuaded that there is a triable issue as to whether plaintiff actually violated defendant's policies.  Mere disagreement with an employer's decision is insufficient to establish pretext.  See, e.g., Loggins, 151 Cal. App. 4th at 1107, 1113 (holding that plaintiff's disagreement with employer's judgment that plaintiff spent "substantial" time using company computers for personal use compared to other employees was insufficient to show pretext where employer reached its conclusion following investigation); McRae, 142 Cal. App. 4th at 390, 398.

　　　[8]Plaintiff's coworker Carl Rossi's declaration likewise does not raise a disputed issue
(continued...)

evidence that anyone found to violate the Safeguard/Lockout policies post-March 2006 was *not* terminated.  Indeed, TIN's Human Resources and Safety Manager Bob Renaud declared that several employees have been terminated after only one violation.  Supp. Renaud Decl. ¶¶ 5–9.[9]  Because it is plaintiff's burden to demonstrate pretext, see Yanowitz, 36 Cal. 4th at 1042, this lack of relevant evidence is insufficient to raise a triable issue.  See McRae, 142 Cal. App. 4th at 397 (noting that plaintiff did not meet her burden of establishing pretext for her employer's decision to transfer her because "[s]he

---

[8](...continued)

of material fact.  Rossi states that he was "pressured to use the safeguard procedures" by his supervisors in order to expedite "repair jobs," and that his supervisors "looked favorably on this practice."  Declaration of Carl Rossi ("Rossi Decl.") ¶ 7.  This statement is not probative of the issue as to which it is proffered because Rossi does not differentiate between major repair jobs that require adherence to Lockout procedures and minor repair jobs that do not.  Rossi further states that he "can attest that an employee who while performing repairs complies with the safeguard rules but does not fully lockout his machine would normally not be subjected to a disciplinary action."  Id. ¶ 8.  As a non-managerial employee not responsible for setting policies or disciplining employees, this naked conclusory assertion lacks foundation and is again not probative of the issue.  Finally, Rossi contends that "numerous other employees" have used only safeguard procedures in conducting maintenance repairs "in full view of John Hitt and Scott Vincent."  Id. ¶ 9.  This assertion, however, lacks foundation as to the basis of such claimed knowledge and does not address the Lockout policy.  Accordingly, Rossi's declaration does not raise a triable issue of disputed fact.

[9]Renaud declares that "several employees were terminated for their first Lockout or Safeguard violation after the Company changed to a one-strike policy," including an employee committing his or her first violation on each of the following dates: August 15, 2006, for entering a pit without a Safeguard key; January 23, 2009, for a first-time Safeguard violation; May 22, 2009, for entering a trailer without a key; January 12, 2010, for entering the corrugated knife area while a machine was running; January 28, 2010, for a mechanic's first Lockout violation; November 18, 2010, for a mechanic's first Lockout violation; and December 20, 2010, for failing to use Lockout before removing trim from the Corrugator machine.  Supp. Renaud Decl. ¶¶ 5–9.  Renaud notes that he is "not aware of any TIN employee since March of 2006, when we began the process of introducing TIN's zero-strike policy, who was found to have violated the Safeguard or Lockout policy but was not terminated."  Id. ¶ 10.

made no showing that the Department routinely, or indeed ever, punished persons for filing FEHA complaints by transferring them to other, less favorable assignments").

Accordingly, plaintiff has failed to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the [non-retaliatory] reasons." McRae, 142 Cal. App. 4th at 390. Defendant's motion is therefore GRANTED as to plaintiff's first claim.

### B.    Plaintiff's Second Claim for Wrongful Termination Under FEHA

Plaintiff's second claim alleges that his employment was terminated in violation of the public policy set forth in FEHA based on his participation in Edward Macias's harassment suit. Compl. ¶¶ 35–36. As with plaintiff's first claim, the same McDonnell Douglas burden-shifting framework applies to a wrongful termination claim under FEHA. See Steele v. Youthful Offender Parole Bd., 162 Cal. App. 4th 1241, 1252 (Cal. Ct. App. 2008) (citing Yanowitz, 36 Cal. 4th at 1042). As discussed above, however, plaintiff has not demonstrated a triable issue regarding pretext. Plaintiff's second claim therefore also fails as a matter of law. Yanowitz, 36 Cal. 4th at 1044.

Accordingly, defendant's motion is GRANTED as to plaintiff's second claim.

### C.    Plaintiff's Third Claim for Intentional Infliction of Emotional Distress

To state a claim for IIED, a plaintiff must show: "(1) outrageous conduct by defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." Bogard v. Empl. Casualty Co., 164 Cal. App. 3d 602, 616 (Cal. Ct. App. 1985). Thus, a plaintiff must allege conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civil community." Yu v. Signet Bank, 69 Cal. App. 4th 1377, 1397 (Cal. Ct. App. 1999).

/ / /

/ / /

Plaintiff's IIED claim asserts that defendant's alleged retaliatory firing caused him severe emotional distress.  Compl. ¶¶ 42–43.  Plaintiff does not allege any additional facts in support of this claim.

In light of the Court's ruling as to plaintiff's first and second claims, the IIED claim also must be dismissed.  "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."  Janken v. GM Hughes Elec., 36 Cal. App. 4th 55, 80 (Cal. Ct. App. 1996) (holding that personnel management decisions such as layoffs and terminations are not "outrageous").  Because plaintiff has not demonstrated a pretextual reason for defendant's decision to terminate his employment, defendant's act of firing plaintiff for violating its safety policies is not "so extreme as to exceed all bounds that are usually tolerated in a civil community." Yu, 69 Cal. App. 4th at 1397.

Accordingly, defendant's motion is GRANTED as to plaintiff's IIED claim.

**V.    CONCLUSION**

In accordance with the foregoing, defendant's motion for summary judgment is GRANTED in its entirety.

IT IS SO ORDERED.

Dated: January 30, 2012

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE